# Ottinger
### EMPLOYMENT LAWYERS

401 Park Avenue South
New York, NY 10016
(212) 571-2000

535 Mission Street
San Francisco, CA 94105
(415) 262-0096

**Benjamin Weisenberg**
(212) 571-2000
Benjamin@ottingerlaw.com

September 10, 2018

**BY ECF ONLY**
Magistrate Judge Cheryl L. Pollak
United States District Court
Eastern District of New York
225 Cadman Plaza
Brooklyn, NY 11201

      Re:   *Jason McFadden v. Radegast Hall LLC, and Ivan Kohut, 7-cv-5118 (DLI) (CLP)*

Dear Judge Pollak:

As Your Honor is aware, The Ottinger Firm, P.C. (the "Firm") represents Plaintiff in the above-referenced action. We are pleased to report that the parties have entered into a proposed settlement agreement ("Agreement") **(Ex. A)** that would dispose of all claims in this action as they relate to Named Plaintiff. We therefore write to respectfully provide the Court with the following explanation of the basis for the proposed settlement and why it should be approved as fair and reasonable.

    **I.    Introduction and Statement of the Case**

Defendants Radegast Hall LLC ("Radegast") and Ivan Kohut (collectively, "Defendants"), operate a biergarten-style restaurant in Brooklyn New York. Named Plaintiff Mr. Jason McFadden worked at Radegast from April 2013 through May 2017 as an Overnight Porter. His duties in this role included cleaning bathrooms, cleaning tables, sweeping, and ensuring the general upkeep of premises. On August 30, 2017, through the Ottinger Firm, Mr. Jason McFadden filed a Collective and Class Action Complaint. (ECF Dkt No. 1) alleging violations of the overtime requirements of the FLSA, 29 U.S.C. § 201, *et seq.*, the minimum wage and overtime requirements under the NYYL, § 650 *et seq.*, the spread of hours requirement under New York City Rules and Regulations, 12 NYCRR § 142-2.4 ("NYCRR") and the record keeping requirements of NYLL § 195 *et seq*. Defendants retained Mr. Justin Marino (of "Stevenson Marino LLP"), as their counsel in this matter. Defendants filed their Answer on November 17, 2017 (ECF Dkt No. 11), disputing material allegations in the Complaint, denying liability and objecting to this matter proceeding as a Collective Action. (Id.)

Plaintiff's counsel and Defendants' counsel conducted numerous phone calls starting at an early stage in these proceedings. Plaintiffs' counsel and Defendants' counsel identified that the main point of contention, from Defendant's view, is that Named Plaintiff was the only individual employed as an Overnight Porter during the relevant statutory period. Defendants therefore challenged Named Plaintiff's ability to bring a class or collective action on behalf of other hourly employees who, in Defendant's view, maintained job duties and responsibilities entirely dissimilar from that of Named Plaintiff.

Subsequently the parties were referred to mediation. As part of that process, they exchanged informal discovery. Specifically, Defendant produced all Named Plaintiff's time and pay data in its possession. After reviewing the production, Plaintiff questioned both the accuracy and the completeness of the records produced. Before mediation occurred, the parties held additional phone conferences during which they were able to competently address the strengths and weaknesses of the other party's respective claims and defenses. Named Plaintiff highlighted the testimonial evidence as well as the damages evident in his time and pay records. Defendants highlighted that Named Plaintiff was the only employee who worked as an Overnight Porter, who, in their view, lacked ability to bring a class or collective on behalf of other employees not similarly situated. In light of the risk, Named Plaintiff faces in achieving certification, the parties reached the Agreement which settles all claims for Named plaintiff as an individual.

### III. The Proposed Settlement is Fair and Reasonable

The Agreement provides for the settlement of all Named Plaintiff's FLSA and NYLL claims in exchange for a payment of $68,000. Of these funds, $25,000 corresponds to alleged unpaid wages, $25,000 corresponds to alleged NYLL penalties, and $18,000 corresponds to attorney's fees to be paid to the Ottinger Firm. Importantly, the settlement only provides for a release of Named Plaintiff's claims, not those of any other employees.

When parties privately settle FLSA claims with prejudice, the settlement must be approved by a district court or the Department of Labor. (See *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199, 206 (2d Cir. 2015), cert. denied, 136 S. Ct. 824 (2016).) To warrant such approval, the parties must satisfy the court that their agreement is "fair and reasonable." (*Flores v. Food Express Rego Park, Inc.*, No. 15-cv-1410, 2016 WL 386042, at *1 (E.D.N.Y. Feb. 1, 2016).)

"In determining whether the proposed settlement is fair and reasonable, a court should consider the totality of the circumstances, including, but not limited to the following factors: (1) the plaintiff's range of possible recovery; (2) the extent to which the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses; (3) the seriousness of the litigation risks faced by the parties; (4) whether the settlement agreement is the product of arm's-length bargaining between experienced counsel, and (5) the possibility of fraud or collusion." ((*Wolinsky v. Scholastic, Inc.*, 900 F.Supp.2d 332, 335 (S.D.N.Y. 2012) (internal citations omitted).) Factors that weigh against approving a settlement include: (1) the presence of other employees situated similarly to the claimant, (2) a likelihood that the claimant's circumstances will recur, (3) a history of FLSA non-compliance by the employer or others in the same industry or geographic region, and (5) the desirability of a

mature record and appoint determination of the governing factual or legal issues to further develop the law. ((Id. at 336.) (internal citations omitted).)

a.      **Plaintiff's Range of Possible Recovery Supports Settlement Approval**

The funds given to Named Plaintiff under the settlement likely exceed 100% of what he could possibly recover were he to proceed with litigation. Defendants are willing to pay the full value of his damages, if not more, for an early stage resolution. Calculating Named Plaintiff's damages in this instance is extremely difficult because Plaintiff is uncertain if the time and pay records in Defendant's possession are complete. The only damages Named Plaintiff has been able to calculate with full certainty are his NYLL § 195 recordkeeping penalties for wage statements and notices that he was never issued. As for his unpaid wages, Named Plaintiff is adamant that throughout the course of his employment he suffered systemic underpayments of both his regular and overtime wages.

Based on the above considerations, the parties reached a negotiated compromise that encompasses NYLL record-keeping penalties and liquidated damages, as well as the unascertainable unpaid wages allegedly accrued throughout his four years of employment. The amount of $50,000 payable to Named Plaintiff is well within the range of possible recovery were he to proceed with litigation, especially in light of the inability to fully calculate damages.

b.      **Plaintiff's Avoidance of Their Burden to Establish their Respective Claims and Their Litigation Support Settlement Approval**

The settlement amount is reasonable in light of the considerable risk Named Plaintiff faces in achieving certification, maintaining certification and securing an outcome that is better than or even equal to the Agreement. Defendants vehemently assert that Named Plaintiff was the only Overnight Porter and that there are no other employees to whom he is similarly situated. In addition, were Named Plaintiff to proceed with his class/collective suit, because Named Plaintiff claims that Defendant failed to maintain accurate time and pay records, evidence in this case will be mostly testimonial in nature.

Defendants have and will argue unique questions of fact exist as to (i) how many hours Putative Collective Members actually worked during any given workweek, (ii) whether Defendants failed to pay each individual Putative Collective Member their regular rate and premium pay for each overtime hour worked, and (iii) whether some of the Putative Collective Members' different job titles and duties will defeat Plaintiffs' allegation that the Putative Collective Members are "similarly situated."  Defendants argued during phone conferences that testimonial evidence may not be considered sufficient "generalized proof" to maintain a Collective Action. (See, e.g., *Mendez v. U.S. Nonwovens Corp., No*. 12 Civ. 5583 (ADS) (SIL), 2016 WL 1306551, at *3-7 (E.D.N.Y. Mar. 31, 2016) (decertifying the collective as the plaintiffs failed to show that their claims for overtime were supported by "generalized proof"); *Scott v. Chipotle Mexican Grill, Inc*., No. 12 Civ. 8333 (ALC) (SN), 2017 WL 1287512, at *9 (S.D.N.Y. Mar. 29, 2017) (decertifying the collective).)

In light of the significant litigation risks Plaintiff faces, the Agreement's terms weigh heavily in favor of approving this Settlement as fair and reasonable.

**c.     Resolution of This Action at This Stage of the Litigation and on the Basis of Arm's-Length Bargaining Between Counsel Supports Settlement Approval**

The parties' proposed Agreement is the product of protracted arm's-length bargaining between experienced counsel and is absent of any fraud or collusion. The Agreement was reached after several, if not a dozen, phone calls over the course of several months. The Agreement avoids the unnecessary costs and difficulties of further litigation. Additional discovery and/or motion practice is unlikely to provide any additional detail useful to the parties because all available time and pay records have been provided.

**d.     Review of the Negative *Wolinsky* Factors Supports Settlement Approval**

A review of the Negative *Wolinksy* Factors weighs heavily in favor of approving this Settlement as fair and reasonable. Defendants have communicated that they have already produced all of Named Plaintiff's time and pay records. As such, further discovery of would likely prove futile. The parties are therefore not aware of any reason why a more "mature record" would need to be developed in this action.

In addition, Defendants have retained competent employment counsel so that they do not incur additional liabilities in the future, and they have not been party to a FLSA or NYLL Class or Collective Settlement in the past that they have subsequently violated and/or repeated their past offense.

**e.     Plaintiffs' Counsel's Request for Attorneys' Fees Equal to One-Third of the Fund Is Reasonable and Supports Settlement Approval**

The Firm is requesting attorneys' fees equaling $18,000. This amount constitutes considerably less than one third the settlement amount of $68,000. There are two ways to compensate attorneys for successful prosecution of statutory claims: the lodestar method and the percentage of the fund method. (*See McDaniel v. Cnty. Of Schenectady,* 595 F. 3d 411, 417 (2d Cir. 2010).) In wage and hour class or collective action lawsuits, courts often award attorneys' fees as a percentage of the total fund in lieu of using the lodestar-type method. (*Wolinsky*, 900 F.Supp.2d at Footnote 2; see also *Willix v. Healthfirst, Inc.*, 2011 WL 754862, at *6; see also *Hernandez v. Immortal Rise, Inc.*, 306 F.R.D. 91, 102 (E.D.N.Y. 2015) ("Public policy favors a common fund attorneys' fee method in wage and hour class action litigation."); see also *Garcia v. Pancho Villa's of Huntington Village, Inc.,* 2012 WL 5305694, at *7 ("[t]he trend in this Circuit is to use the percent of the fund method to compensate attorneys in common fund cases"); see also *Puglisi v. T.D. Bank, N.A,* 2015 WL 4608655, at *1 (awarding class counsel one-third of the common fund).)

The Firm has worked a total of approximately 110.46 hours on this matter as of the date of this submission, which includes approximately 47.75 attorney hours and 62.71 paralegal hours. The

hours reported are reasonable for a case of this complexity and magnitude and were compiled from contemporaneous time records maintained by each attorney participating in the case using the online time tracking service Harvest.

| INDIVIDUAL, POSITION | HOURLY RATE | TOTAL HOURS | FEES |
|---|---|---|---|
| Benjamin Weisenberg, Associate | $450 | 21.4 | $9,630.00 |
| Erica Sanders, Associate | $350 | 24.94 | $8,729.00 |
| Ariel Graff, Former Associate | $550 | 1.41 | $775.50 |
| Jose Caceres, Paralegal | $250 | 24.15 | $6,037.50 |
| Daniel Strellman, Former Paralegal | $250 | 19.11 | $4,777.50 |
| Kathryn Daly, Former Paralegal | $250 | 1.06 | $265.00 |
| Anna Odoi, Paralegal | $250 | 18.39 | $4,597.50 |
| | | | **Total: $34,812.00** |

The Firm's time in this matter is the equivalent of approximately $34,812. The Firm's lodestar, therefore, is approximately .52, meaning that it seeks to recover only a fraction of what it has actually billed in the case.

The Firm's reasonable fee weighs in favor of approving this Settlement as fair and reasonable.

## Exhibits

Exhibit A:    Fully Executed Settlement Agreement and Stipulation

*    *    *

The Court, based on the foregoing and the documents annexed hereto, should approve the parties' proposed Agreement as both fair and reasonable in light of the circumstances of this case.

Dated: New York, New York

      September 10, 2018

Respectfully submitted,

By: _____

**THE OTTINGER FIRM, P.C.**
Benjamin Weisenberg
401 Park Avenue South
New York, New York 10016
Telephone: (212) 571-2000
benjamin@ottingerlaw.com